UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE V.,

                        Plaintiff,

                v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION AND ORDER

19-CV-6576L

## PRELIMINARY STATEMENT

Plaintiff Lawrence V. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for period of disability and disability insurance benefits ("DIB") and for supplemental security income benefits ("SSI"). (Dkt. # 1).

On February 25, 2016, plaintiff protectively filed an application for DIB and SSI, alleging disability beginning on September 1, 2014. (Tr. 50-53).[1]  On April 8, 2016, the Social Security Administration denied plaintiff's applications, finding that he was not disabled. (Tr. 72-95). Plaintiff requested and was granted a hearing before an administrative law judge. (Tr. 97-104). Administrative Law Judge Brian Kane (the "ALJ") conducted the hearing on August 8, 2018, at which plaintiff and vocational expert Dr. Peter Manzi (the "VE") testified. (Tr. 30-49). In a

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 5) utilize the internal Bates-stamped pagination assigned by the parties.

decision dated September 5, 2018, the ALJ found that plaintiff was not disabled and was not entitled to benefits. (Tr. 15-29). On June 7, 2019, the Appeals Council denied plaintiff's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Plaintiff then commenced this action on August 6, 2019. (Dkt. # 1).

Currently pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 10, 12). In his motion, plaintiff requests that this Court vacate the Commissioner's decision and remand this case solely for reversal and calculation of benefits in his favor, or, alternatively, remand this case for further administrative proceedings. (Dkt. # 10-1 at 22). For the reasons stated below, plaintiff's motion (Dkt. # 10) is granted in part and only to the extent that this matter is remanded for further administrative proceedings consistent with this decision. The Commissioner's cross motion (Dkt. # 12) is accordingly denied.

## DISCUSSION

### I.   <u>Relevant Standards</u>

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

## II.   **The ALJ's Decision**

Here, the ALJ applied the sequential analysis.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 1, 2014 – the alleged onset date. (Tr. 17).  At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disease of the spine; chronic obstructive pulmonary disease ("COPD"); and obesity. (*Id.*).  The ALJ also discussed several other physical and mental impairments that he found to be nonsevere.  (Tr. 18-20).  At step three, the ALJ concluded that plaintiff's impairments, alone or in combination, did not meet or medically equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations (the "Listings").  (Tr. 20).

The ALJ then determined that plaintiff retained the RFC to perform the full range of sedentary work.  (Tr. 20).  At step four, the ALJ found that plaintiff could not perform any of his past relevant work as a short-order cook, cook, and landscape specialist.  (Tr. 23-24).  Finally, at step five, and using the Medical-Vocational Guidelines, or "grids," as a framework for decision-making, the ALJ concluded that based on plaintiff's RFC, age, education, and work experience, the grids directed a finding of not disabled.  (Tr. 24).  Accordingly, the ALJ found plaintiff to be not disabled under the Act.  (Tr. 24-25).

## III.   **Plaintiff's Contentions**

Plaintiff challenges the ALJ's disability finding for two separate reasons.  (Dkt. ## 10-1, 13).  First, he contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erroneously discounted the medical opinion evidence of record and improperly crafted an RFC instead based on his lay reading of the medical evidence.  (Dkt. # 10-1 at 9-19; Dkt. # 13 at 1-9).  Second, plaintiff maintains that the ALJ's analysis of plaintiff's subjective

3

complaints was flawed because the ALJ "mischaracterized" and "cherry-pick[ed]" record evidence.  (Dkt. # 10-1 at 19-21; Dkt. # 13 at 9-10).  I agree with plaintiff that the ALJ's RFC determination is based on his lay interpretation of the medical evidence and is thus not supported by substantial evidence.

IV.   **Analysis**

The record in this case contained two medical opinions evaluating plaintiff's functional capacity: first, an internal medicine examination completed by consultative examiner Dr. Gilbert Jenouri, MD ("Dr. Jenouri") (Tr. 535-39); and second, a physical medical source opinion completed by Dr. John Buckley, MD ("Dr. Buckley"), plaintiff's most recent treating primary care physician (Tr. 580-81).  As demonstrated below, the ALJ effectively rejected these doctors' opined limitations by finding that plaintiff retained the RFC to perform the "full range" of sedentary work.

On April 5, 2016, plaintiff presented to Dr. Jenouri for a consultative internal medical examination.  (Tr. 535-38).  At that time, plaintiff's chief complaint was "difficulties with his neck and lower back."  (Tr. 535).  These difficulties took the form of dull, aching, and throbbing pain precipitated by activity, which plaintiff described to be at a level of 5/10, and which radiated and caused numbness and tingling in his legs.  (Tr. 535).  Plaintiff also complained of COPD and reported having shortness of breath every day and dyspnea after walking one to two blocks (or 10 to 15 minutes), but that he had no breathing attacks in the past.  (*Id.*).  Plaintiff smoked ten cigarettes a day and had been smoking for over thirty years.  (*Id.*).  As far as activities of daily living, plaintiff stated that he cooked twice a week, did laundry once a week, shopped "on occasion," did no cleaning, and showered and dressed "on occasion."  (Tr. 536).  Plaintiff spent his time watching television and socializing with friends.  (*Id.*).

4

On physical examination, plaintiff appeared in no acute distress, had normal stance, used no assistive devices to ambulate, needed no help changing for the examination or getting on or off the examination table, and was able to rise from a chair without difficulty. (Tr. 536). However, Dr. Jenouri noted that plaintiff walked with antalgic gait, was unable to walk on his heels and toes without difficulty, and could only squat 60% of normal. (*Id.*).

Moreover, plaintiff's neck was supple, and his cervical spine had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (Tr. 536-37). He also had no abnormality in his thoracic spine. (Tr. 537). Plaintiff's lumbar spine range of motion, though, was limited, he had positive straight leg raise tests, and Dr. Jenouri noted "bilateral sciatica notch tenderness to palpation." (*Id.*). Plaintiff also had limited range of motion in his shoulders, but full range of motion in his elbows, forearms, wrists, knees, and ankles. (*Id.*). His joints were stable and nontender. (*Id.*). Plaintiff exhibited decreased sensation in fine touch in his lower extremities, but he had full strength in his upper and lower extremities, and his hand and finger dexterity were intact with full grip strength bilaterally. (*Id.*).

In addition to conducting a physical examination of plaintiff, Dr. Jenouri also reviewed an April 6, 2016 x-ray of plaintiff's lumbar spine. (Tr. 537, 539). The x-ray showed degenerative changes and an old thoracic compression fracture. (Tr. 539). Specifically, plaintiff had mild degenerative spondylosis at T12-L1, L3-L4, and L4-L5, an old compression fracture at T12, a transitional L5 vertebral body, and no lumbar compression fracture. (*Id.*).

Ultimately, Dr. Jenouri diagnosed plaintiff with neck and low back pain, bilateral lower extremity pain and paresthesia, hypertension, and COPD. (Tr. 538). Dr. Jenouri opined that plaintiff had "[m]oderate to marked restriction[s] walking, standing and sitting long periods,

5

bending, stair climbing, and lifting and carrying." (*Id.*). Dr. Jenouri also opined that plaintiff "should avoid smoke, dust and other known respiratory irritants." (*Id.*).

Nearly two years later, Dr. Buckley offered a physical medical source opinion regarding plaintiff's functional capacity on March 2, 2018. (Tr. 580-81). As the ALJ recognized, Dr. Buckley became plaintiff's treating primary care physician in January 2018. (Tr. 21).

At the time Dr. Buckley rendered his opinion, he noted that he had only seen plaintiff once – at an initial appointment on January 22, 2018. (Tr. 574-75, 580). At that initial appointment, plaintiff reported (as he did to Dr. Jenouri) "ongoing lumbar pain with radicular distribution to his legs," and Dr. Buckley's physical examination of plaintiff revealed (similar to Dr. Jenouri's examination) that "[w]hile supine, straight leg raising bilaterally g[ave] pain in the lumbar region with radiation of pain to the ipsilateral leg," although plaintiff's lumbar region was "nontender to palpation." (Tr. 574). Considering the radicular symptoms and low back pain plaintiff was experiencing, Dr. Buckley indicated that an MRI should be performed. (*Id.*).

Based on that examination, Dr. Buckley opined in March 2018 that plaintiff had degenerative disc disease of the lumbar spine and noted that "no improvement [was] expected." (Tr. 580). In characterizing plaintiff's pain, Dr. Buckley wrote "lumbar pain, worse with movement," which was based on the fact that plaintiff had "pain on movement of lumbar region." (*Id.*). Moreover, in Dr. Buckley's view, plaintiff's pain was severe enough to "frequently" interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*). Dr. Buckley also opined that the pain would "significantly impair" plaintiff's daily functioning and limited plaintiff's functional capacity in a work setting such that plaintiff could: only "rarely" lift and carry less than ten pounds and could never lift ten pounds or more in a competitive work situation; never twist, stoop/bend, crouch/squat, climb ladders, or climb stairs; only sit and

6

stand/walk for a total of less than two hours in an eight-hour workday; sit for 15 minutes at one time before needing to get up; and stand for ten minutes at one time before needing to sit down or walk around.  (Tr. 580-81).  Finally, Dr. Buckley opined that plaintiff was likely to be absent for more than four days per month because of his lumbar back pain.  (Tr. 581).

The ALJ discussed these opinions in the RFC portion of his decision.  (Tr. 22-23).  In assessing Dr. Jenouri's opinion, the ALJ provided several reasons why it was "not entirely consistent with the record as a whole" and afforded it "partial weight only."  (Tr. 22-23).  Specifically, the ALJ noted that: plaintiff required "minimal treatment" during the relevant period; plaintiff remained capable of "leaving his home when necessary and performing non-strenuous tasks in his home"; plaintiff typically did not demonstrate abnormal gait; plaintiff "appear[ed] capable" of lifting/carrying up to ten pounds; plaintiff never displayed any weakness or loss of range of motion in his upper extremities; and plaintiff's COPD was mild and well-controlled with medication.  (Tr. 22-23).  In the ALJ's view, plaintiff "in general exhibited no more than mild (if any) loss of range of motion of the lumbar spine or other joints, and it is not clear, based on Dr. Jenouri's single exam, that [plaintiff] would require significant postural activities."  (Tr. 23).

The ALJ similarly concluded that Dr. Buckley's opinion deserved "little weight" because it was "not consistent with the record," including treatment notes close-in-time to Dr. Buckley's opinion, and because at the time Dr. Buckley rendered his opinion, the treating relationship between plaintiff and Dr. Buckley was limited in length.  (Tr. 23).  As it related to the opinion's consistency with other record evidence, the ALJ noted that Dr. Buckley's restrictive opinion was at odds with a February 19, 2018 treatment note completed by William Gruhn, PA ("Gruhn") (which the ALJ mistakenly attributed to Dr. Buckley).  (Tr. 22-23, 575-79).

At that time, plaintiff reported to Gruhn that he had "constant aching" in his low back that went through his buttocks and left leg, which he rated a 5/10, but denied any weakness or numbness in his lower extremities. (Tr. 575). Plaintiff also stated that heat and medication made his pain "somewhat" better, while sitting or standing "any length of time ma[de] it worse." (*Id.*). On physical examination, plaintiff was "healthy and well-appearing." (Tr. 576). He ambulated with normal gait, had full flexion and extension of the lumbar spine and negative straight leg raises, and exhibited no tenderness in the posterior elements of his lumbar spine. (*Id.*). Plaintiff's sensation was intact to light touch from L3-S1 bilaterally, and he had full and painless range of motion of his knees and hips bilaterally. (Tr. 576-77). Gruhn also reviewed an x-ray that was taken of plaintiff's lumbar spine on February 19, 2018. (Tr. 577-78). Those images showed that plaintiff had "multiple level degenerative changes of the lumbar spine most pronounced at L4-L5 where there is marked disc degeneration." (Tr. 577). He assessed plaintiff with degenerative disc disease of the lumbar spine. (*Id.*).

I note that aside from the slight differences in physical examination results, the symptoms plaintiff reported to Dr. Buckley and Gruhn were generally consistent, as was Dr. Buckley's and Gruhn's ultimate diagnosis for plaintiff – degenerative disc disease of the lumbar spine. I therefore do not agree with the ALJ that Gruhn's examination of plaintiff "provided *no* objective evidence of serious physical deficits which would justify the limitations included in Dr. Buckley's March 2018 opinion." (Tr. 23 (emphasis supplied)).

Ultimately, the ALJ concluded that plaintiff retained the RFC to perform "the *full range* of sedentary work." (Tr. 20 (emphasis supplied)). By so finding, the ALJ implicitly found that plaintiff could "stand and walk for a total of approximately 2 hours during an 8-hour workday" and "remain in a seated position for approximately 6 hours of an 8-hour workday," with regularly

scheduled breaks.  Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, *6 (S.S.A. July 2, 1996).  Indeed, based on the ALJ's view of the evidence, he found that plaintiff "should be capable of lifting/carrying 10 pounds occasionally and less than 10 pounds frequently," "should be capable of walking/standing for at least 2 hours in an 8 hour day," that the record did not suggest plaintiff was "unable to engage in postural activities such as stooping, kneeling or climbing stairs," and there was "otherwise no reasonable indication in the record that additional or more restrictive limitations would be warranted in this case."  (Tr. 23).

Plaintiff now contends that this conclusion is not supported by the opinions of Drs. Jenouri and Buckley and reflects the ALJ's own lay interpretation of the medical record.  (Dkt. # 10-1 at 9, 15-19).  I agree.

To be sure, generally an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order).  However, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."  *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted); *accord Carla S. v. Comm'r of Soc. Sec.*, 2020 WL 7021441, *3 (W.D.N.Y. 2020) (explaining that an ALJ's RFC determination must generally "be supported by medical opinions," unless a claimant's "impairments are relatively simple and mild such that the ALJ can render a common sense judgment about functional capacity," or the record is otherwise "clear and contains some useful assessment of the claimant's limitations from a medical source") (citations and quotations omitted).  "Accordingly, although the RFC determination is an issue reserved for the Commissioner, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses

to specific functional capabilities, as a general rule, the Commissioner may not make the connection himself." *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (alterations and quotations omitted).

Initially, despite purportedly assigning the opinion evidence discounted weight, it is clear that by finding that plaintiff could perform the "full range" of sedentary work – with *no* additional limitations – the ALJ effectively rejected the opinions of Drs. Jenouri and Buckley.  Indeed, Dr. Buckley's opinion regarding plaintiff's exertional limitations – that plaintiff could not lift and carry ten pounds or more, could only sit and stand/walk for less than two hours total in a workday, and needed to change sitting and standing positions every few minutes – is not consistent with the ALJ's RFC determination.  *See* SSR 96-9p, 1996 WL 374185 at *6-7.  Similarly, Dr. Jenouri's opinion of "moderate to marked" restrictions for, among other things, exertional activities such as walking, standing and sitting for long periods, and lifting and carrying, is not consistent with the full range of sedentary work.  *See, e.g.*, *York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 261-62 (W.D.N.Y. 2019) (ALJ's RFC determination that plaintiff could perform sedentary work with no additional exertional limitations was not supported by substantial evidence, where ALJ "rejected" the only medical opinion, which stated that plaintiff had "moderate to marked limitations standing, walking, bending, lifting and carry," and "moderate limitations sitting for [more than 30 minutes at a] time," based on the ALJ's own lay interpretation of raw medical data) (collecting cases). These opinions thus do not constitute substantial evidence for the ALJ's RFC determination, and in fact are at odds with that determination.

Critically, however, the opinions of Drs. Jenouri and Buckley are the only evidence of record attempting to objectively assess plaintiff's functional capabilities, particularly as they relate to plaintiff's limitations associated with his lumbar spine.  Although the record contains many

10

treatment notes and several diagnostic images of plaintiff's spine, none of those records attempt to translate plaintiff's complaints of pain or objective test results into functional terms. In other words, none of the other records "reflect or contain a 'useful assessment of [plaintiff's] limitations from a medical source' that would support the ALJ's RFC determination." *Bayer v. Comm'r of Soc. Sec.*, 2020 WL 3481451, *6 (W.D.N.Y. 2020) (citation omitted).

Nor, in my opinion, are plaintiff's impairments "relatively simple and mild" such that the ALJ could have rendered a "common sense judgment" regarding plaintiff's functional limitations in this case. *Carla S.*, 2020 WL 7021441 at *3. Indeed, diagnostic imaging consistently confirmed degenerative changes in plaintiff's spine. Specifically, as the ALJ noted, due to low back pain, plaintiff had his lumbar spine x-rayed in October 2011. (Tr. 21, 373-74). That imaging showed no acute fracture or malalignment, that plaintiff's vertebral height was within normal limits, but that there was "mild degenerative changes throughout the lumbar spine most prominent from L3-L4 through L5-S1," which appeared to be "mildly progressed." (Tr. 373). Moreover, as mentioned above, x-rays of the lumbar spine completed in April 2016 (which Dr. Jenouri reviewed and accounted for in his opinion) revealed "mild degenerative spondylosis (disc space narrowing and osteophyte formation) at T12-L1, L3-L4, and L4-L5." (Tr. 539). Finally, imaging completed in February 2018 confirmed "multiple level degenerative changes of the lumbar spine most pronounced at L4-L5 *where there is marked disc degeneration*." (Tr. 577 (emphasis supplied)).

Moreover, these diagnostic image results reasonably corroborate plaintiff's subjective complaints of pain and reported functional limitations. At the administrative disability hearing, plaintiff testified that while performing his prior jobs, he found that he "needed to be able to stand and sit as needed." (Tr. 36). He also testified that his ability to do activities around the house was greatly limited because of his increasingly worsening back pain: he did "very little" cleaning

(Tr. 40); had difficulty navigating stairs (Tr. 43); some days had trouble getting out of bed and standing up straight (Tr. 44); could only walk a limited distance (the length of three houses) without having to rest (Tr. 44-45); could not put on socks without difficulty (Tr. 45); and needed his partner to help get dressed (Tr. 47-48).  In addition, in his adult function report, plaintiff described difficulties standing and walking for long periods and stated that he must change positions frequently while sitting.  (Tr. 272-73).

Thus, while I recognize that "sedentary work" is the "lowest exertional level" of work, *Wendy H. v. Comm'r of Soc. Sec.*, 2020 WL 2559915, *6 (N.D.N.Y. 2020) (citation omitted), and that it "represents a significantly restricted range of work," SSR 96-9p, 1996 WL 374185 at *3, I cannot conclude that the ALJ's RFC determination that plaintiff can perform the "full range" of sedentary work is supported by substantial evidence on this record.

In short, the ALJ's determination demonstrates that he rejected the (rather severe and consistent) opinion evidence of record, which, critically here, constituted the only evidence containing assessments of plaintiff's functional capabilities.  As a result, and on this record, the ALJ erroneously reached his RFC determination based on his own lay interpretation of bare medical findings.  This was error requiring remand.  *See Carla S.*, 2020 WL 7021441 at *4 ("Neither this [c]ourt nor the ALJ is empowered to make medical conclusions about a claimant's physical condition where, as here, [the] medical records are limited to bare medical findings about a complex physical impairment."); *see also Goble v. Colvin*, 2016 WL 3179901, *6 (W.D.N.Y. 2016) (collecting cases and emphasizing that "the ALJ is not free to form his own medical opinion based on the raw medical evidence").

Accordingly, because I find that the ALJ's RFC determination was not supported by substantial evidence, and because this is not a case where the record contains such persuasive proof

12

of disability that remand would serve no purpose, remand for further administrative proceedings is necessary.  Furthermore, because I find that remand is otherwise warranted, I decline to reach the remainder of plaintiff's contentions.  *See generally Siracuse v. Colvin*, 2016 WL 1054758, *9 (W.D.N.Y. 2016).

## CONCLUSION

For the reasons set forth above, I find that the ALJ's decision was not supported by substantial evidence.  Plaintiff's motion for judgment on the pleadings (Dkt. # 10) is **GRANTED in part** and only to the extent that this matter is remanded for further administrative proceedings consistent with this decision.  The Commissioner's cross motion for judgment on the pleadings (Dkt. # 12) is accordingly **DENIED**.

On remand, the ALJ is directed to reconsider the opinion evidence in the record, particularly as it relates to plaintiff's ability to perform the exertional requirements for sedentary work, and if appropriate, to obtain opinions from plaintiff's treating sources and/or order additional consultative testing, in order to provide a sufficiently complete record upon which a well-reasoned determination of plaintiff's limitations may be made.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      February 5, 2021.